THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MIGDALIA ROA SANTIAGO, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**HOSPITAL PAVÍA ARECIBO, ET AL.,**<br><br>Defendants. | **Civil No. 23-1121 (ADC)** |

**OPINION AND ORDER**

Before the Court is Hospital Pavía-Arecibo's ("HPA") motion for summary judgment (**ECF No. 41**) and HPA's proposed statement of uncontested facts (**ECF No. 42**).

For the following reasons, the motion for summary judgment is **DENIED**.

**I.     Procedural Background**

On March 14, 2023, Migdalia Roa-Santiago (widow of the late Miguel A. Santiago-Cuevas), and Miguel A. Santiago-Cuevas's relatives, Linda Yaritza Santiago-Roa, Yaseline Santiago-Roa, Jonathan Santiago-Roa and María Viruet-Hernández ("plaintiffs"), filed the instant action under this Court's federal question jurisdiction seeking damages against defendants, HPA and Manatí Medical Center ("MMC"). According to the complaint, Miguel A. Santiago-Cuevas was taken to HPA's emergency room, where he was admitted as an inpatient in HPA and discharged several days later. **ECF No. 1**. Unfortunately, he died hours after being

discharged from HPA. *Id*. Plaintiffs seek damages pursuant the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and Puerto Rico tort statutes. P.R. Laws Ann t. 31, §§ 10801, 10803, 10804, 10805, and 10806.

On August 30, 2025, HPA moved for summary judgment on all federal law claims. **ECF No. 42.** HPA also moved to the dismiss plaintiffs' pendent state law claims claiming there was no alternate ground for jurisdiction asserted in the complaint or available to plaintiffs. Plaintiffs opposed HPA's arguments under EMTALA but conceded that there is no alternate ground for federal jurisdiction aside from federal question.[1] **ECF Nos. 52** and **54.** HPA replied. **ECF Nos. 58** and **59**.

## II.  Legal Standard

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party; it is "material" if it potentially affects the outcome of the

---

[1] Plaintiffs asked the Court to drop the diversity-destroying parties if necessary. **ECF No. 52** at 25-26. However, because the federal law claims ultimately survive summary judgment, there is no need to resort to plaintiffs' alternative jurisdiction requests pursuant to Fed. R. Civ. P. 19.

case. *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016); *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). Although the court states the facts in the light most favorable to the party against whom summary judgment is sought, the court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted).

The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.*, 530 U.S. 133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id*.

It is a "bedrock principle that a party opposing summary judgment must adduce specific evidence sufficient to create a genuine issue of material fact." *Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc.*, 126 F.4th 773, 777 (1st Cir. 2025). Local Civil Rule 56(c) states, in pertinent part, that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts" in which it "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Local Civil Rule 56(c). The opposing party may also include a "separate section [of] additional facts" which must comply with Local Rule 56(c). *Id*. Local Civil Rule 56, for its part, provides that "[f]acts contained

in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . .. The court shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." Local Civil Rule 56(c). This is known as an "anti-ferret rule," which is "intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." *López-Hernández v. Terumo Puerto Rico, LLC*, 64 F.4th 22, 26 (1st Cir. 2023). Litigants ignore the anti-ferret rule at their peril. *Rodríguez-Severino v. UTC Aerospace Sys.*, 52 F.4th 448, 458 (1st Cir. 2022). In the end, the nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006).

### III. Discussion[2]

#### A. EMTALA

EMTALA was enacted by Congress to prevent hospitals from "refusing to treat patients with emergency conditions but no medical insurance." *Ramos-Cruz v. Centro Médico Del Turabo*, 642 F.3d 17, 18 (1st Cir. 2000). It creates a civil cause of action for individuals harmed by

---

[2] Because the facts of this case are not voluminous, the Court will consolidate the factual findings with the discussion. Aside from those specifically identified herein, the Court draws the facts from the well-pleaded facts of the complaint and the statements of proposed facts submitted by the parties that comply with Local Rule 56. *See CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). Although the Court reviewed every statement submitted by the parties, it will only consider and include in this Opinion and Order those facts that are material and uncontested for purposes of summary judgment as mandated by Fed. R. Civ. P. 56.

prohibited conduct to "obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." 42 U.S.C. § 1395dd(d)(2)(A). However, EMTALA is not a federal medical malpractice statute. *Correa v. Hospital San Francisco,* 69 F.3d 1184, 1192 (1st Cir. 1995); *see also Reynolds v. MaineGeneral Health*, 218 F.3d 78, 83 (1st Cir. 2000).

Generally, in order to recover damages under EMTALA, a plaintiff must establish that: (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition. *See Álvarez-Torres v. Ryder Mem'l Hosp., Inc.*, 582 F.3d 47, 51 (1st Cir. 2009). EMTALA imposes two primary duties: first it requires "an appropriate medical screening..." and, second, "if an emergency medical condition exists, the participating hospital must render the services that are necessary to stabilize the patient's condition…." *Cruz-Queipo v. Hosp. Espanol Auxilio Mutuo de Puerto Rico*, 417 F.3d 67, 70 (1st Cir. 2005) (*quoting Correa v. Hospital San Francisco,* 69 F.3d at 1189).

Plaintiffs claim that defendants violated EMTALA by failing to "screen" and "stabilize" the late Miguel A. Santiago-Cuevas. **ECF Nos. 1**; **52** at 2. According to plaintiffs, "[a]s a direct

consequence of these… violations, [Miguel A.] Santiago's condition worsened unnecessarily" and caused his death. *Id*., at 3.

HPA moves for summary judgment. It argues that the uncontested facts show that it provided EMTALA-suitable screening and that it cannot be liable under the statute's stabilization requirements because it "admitted" Miguel A. Santiago-Cuevas. The Court will address each argument in turn, but at the outset, it must note that the parties' proposed statements of uncontested material facts are limited to events that took place before Miguel A. Santiago-Cuevas was admitted as an inpatient. *See* **ECF Nos. 42**, **54**.

### (i) EMTALA screening

EMTALA does not define what an appropriate medical screening requires. However, the First Circuit has explained that a hospital meets EMTALA's screening requirement if it "provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints." *Correa*, 69 F.3d at 1192. In other words, "that there be some screening procedure, and that it be administered even-handedly." *Id*.

In more concrete terms, the First Circuit requires that a "hospital… adhere to its own procedures in administering the screening examination." *Cruz-Queipo*, 417 F.3d at 70. Thus, "a

departure from the hospital's standards, which set the parameters for an appropriate screening[,]" would preclude summary judgment in favor of the hospital. *Id.*, at 71.

HPA moves for summary judgment arguing that it did "precisely the type of screening procedure contemplated under EMTALA and… was an appropriate medical screening examination performed on Mr. Santiago-Cuevas." **ECF No. 41** at 7. Specifically, HPA points to the fact that it screened Miguel A. Santiago-Cuevas "immediately upon arrival… an EKG was performed… triage was completed, through which, among others, the vital signs were obtained, and his chief complaint was recorded…." *Id.*, at 6-7. Moreover, HPA relies on the fact that Miguel A. Santiago-Cuevas "was evaluated by an emergency physician… The physician documented his chief complaint… identified vital signs, obtained the history of present illness, performed a review of systems and physical examination, and entered appropriate medication and laboratory orders, including CBC, BMP, troponin, and arterial blood gases…." *Id.*, at 7. HPA also claims that its medical staff "reached a provisional diagnosis of 'Acute congestive heart failure and unspecified heart failure[']… placed consultations to the internal medicine and cardiology departments…." *Id.*, at 7. In HPA's words, it "went beyond basic triage and performed a thorough medical evaluation with specialist involvement." *Id*.

However, aside from listing the above tests and making general claims that they satisfy EMTALA, *HPA did not point to any of its own regulation or screening protocols*. *See* **ECF No. 41**.[3] In fact, HPA asserts that it only "performed standard ER screening." **ECF No. 62** at 4. By failing to submit a properly supported statement of uncontested facts that included the hospital's relevant screening protocols, HPA failed to meet Fed. R. Civ. P. 56's burden[4] in connection with EMTALA screening claims. *See Cruz-Queipo*, 417 F.3d at 70 ("When a hospital prescribes internal procedures for a screening examination, those internal procedures 'set the parameters for an appropriate screening.'"). Due to HPA's omissions, the Court cannot determine whether the hospital complied with EMTALA's screening requirements. Accordingly, summary judgment against plaintiff's EMTALA screening claims is unattainable. After all, it is HPA's burden, as movant, to show that there is no genuine dispute as to the material facts necessary to show that it met EMTALA screening duties, which include following the relevant protocols. Fed. R. Civ. P. 56(a).

  **(ii)  EMTALA stabilization**

HPA frames its summary judgment bid against plaintiffs' federal stabilization claims as a question of law. It argues that it admitted Miguel A. Santiago-Cuevas as an inpatient after performing the required screening. Thus, it contends, dismissal of all EMTALA stabilization

---

[3] HPA did not contest plaintiffs' claim that Miguel A. Santiago-Cuevas was diagnosed with an emergency medical condition.
[4] *See Quintana-Dieppa v. Dep't of Army*, 130 F.4th 1, 7 (1st Cir. 2025).

claims is automatic pursuant to 42 C.F.R. § 489.24(d)(2)(i)[5] and case law. HPA argues that any claim related to medical treatment or condition after Miguel A. Santiago-Cuevas was admitted constitutes, if anything, a state law medical malpractice claim.[6] In HPA's words, "once admitted, claim lies, if at all, in malpractice, not EMTALA." **ECF No. 58** at 5 (*quoting Benítez-Rodríguez v. Hosp. Pavía Hato Rey, Inc.*, 588 F. Supp. 2d 210, 214 (D.P.R. 2008)).[7]

Plaintiffs offer two arguments in response. First, that case law stands squarely in HPA's way. Specifically, they argue that in 1999 the First Circuit broaden EMTALA's scope by finding a potential EMTALA stabilization violation even in cases where the patient is not in the emergency room. **ECF No. 52** at 19 ("EMTALA's stabilization requirement applies 'wherever in the hospital'") (*citing López-Soto v. Hawayek*, 175 F.3d 170 (1st Cir. 1999)). Thus, plaintiffs contend, EMTALA's stabilization obligations "may cover admitted patients." *Id*.

Second, plaintiffs argue that HPA did not stabilize Miguel A. Santiago-Cuevas at all before discharging him on March 16, 2021. **ECF No. 52** at 18 ("the patient was discharged… unstable, with excruciating abdominal pain, in all likelihood due to a perforated sigmoid diverticulitis."). In their memorandum of law, plaintiffs cite a couple of deposition testimony transcripts, a report prepared by the paramedics that picked up Miguel A. Santiago-Cuevas after

---

[5] In relevant part, 42 C.F.R. § 489.24 provides that "[i]f a hospital… admits that individual as an inpatient in good faith in order to stabilize the emergency medical condition, the hospital has satisfied its special responsibilities under this section with respect to that individual."

[6] As explained before, HPA does not move for disposition on the merits of plaintiffs' malpractice claims on either screening or stabilization grounds.

[7] Plaintiffs concede that EMTALA does not create a federal medical malpractice private cause of action.

he was discharged by HPA, and other evidence. However, as to this second argument, plaintiffs did not comply with Local Civil Rule 56. Indeed, the record shows that there is no proposed statement of uncontested material fact related to Miguel A. Santiago-Cuevas's status or whereabouts after he was admitted. *See* **ECF Nos. 42** and **54**.[8] Therefore, the Court will disregard plaintiffs' second argument. *See Quintana-Dieppa*, 130 F.4th at 7; *Puerto Rico Am. Ins. Co. v. Rivera-Vázquez*, 603 F.3d 125, 131 (1st Cir. 2010) ("Given this root purpose, we have held with a regularity bordering on the monotonous that parties ignore the strictures of an "anti-ferret" rule at their peril.").

HPA filed a reply to plaintiffs' arguments. It argued that the case relied by plaintiff in support of their stabilization claim, *López-Soto v. Hawayek,* predates the adoption of 42 C.F.R. § 489.24(d)(2)(i) (the "rule")[9] by Centers for Medicare & Medicaid Services's ("CMS"). HPA maintained that post-rule decisions by court within this District adopted the CMS's rule and interpretation thereof: that once admitted as an inpatient in good faith, EMTALA no longer attaches. *Id*.; **ECF No. 58** at 5-6.

---

[8] Even when HPA's statement of uncontested material facts omitted information related to the patient's discharge or medical condition post admittance, Local Civil Rule 56(c) allows the non-movant plaintiffs to submit "additional facts." Specifically, the rule provides that "[t]he opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule." *Id*. Plaintiffs did no such thing here.

[9] *See Medicare Program; Clarifying Policies Related to the Responsibilities of Medicare-Participating Hospitals in Treating Individuals with Emergency Medical Conditions*, 68 Fed. Reg. 53222, 53244 (Sept. 9, 2003).

Other than each party citing one or two cases in support of their positions, the parties did not brief the legal issue with the depth it deserves. Accordingly, a succinct background discussion ensues. EMTALA's § 1395dd(b)(1) generally regulates the "[n]ecessary stabilizing treatment for emergency medical conditions" by requiring hospitals to either "(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual…." 42 U.S.C.A. § 1395dd(b)(1). Pursuant to EMTALA, "to stabilize" means "with respect to an emergency medical condition… to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility…." 42 U.S.C.A. § 1395dd(e)(3)(A).

Courts across the country are divided as to when EMTALA stabilization duties start and when they stop, especially after the adoption of the rule.[10] Even before its adoption, the Court of Appeals for the First Circuit took a rather special view of the issue. In *López-Soto v. Hawayek*, 175 F.3d 170 (1st Cir. 1999) the First Circuit held that "the absence of emergency room presentment" did not eliminate a hospital's EMTALA obligation to stabilize a baby born on an

---

[10] *Compare inter alia Bryan v. Rectors & Visitors of Univ. of Va.*, 95 F.3d 349, 352 (4th Cir. 1996); *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1168 (9th Cir. 2002); *Harry v. Marchant*, 291 F.3d 767, 772 (11th Cir. 2002); *with Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 581–82 (6th Cir. 2009).

inpatient unit. *López-Soto*, 175 F.3d at 177. While *López-Soto* addressed whether EMTALA's stabilization obligations attached in cases where the emergency was not addressed at the emergency room, it rejected a bright-line rule that EMTALA's obligations do not apply to inpatients.

HPA argues that *López-Soto* was decided based on a legal landscape that has since changed. Moreover, HPA posits that post-rule decisions in this District uniformly hold that good faith admittance of a patient closes the door to EMTALA claims. HPA specifically cites *Benítez-Rodríguez*, where a court in this District determined that "EMTALA stabilization requirement cannot be met in the case at bar, because [the individual] was admitted as a patient…." *Benítez-Rodríguez*, 588 F. Supp. 2d 210, 215 (D.P.R. 2008). Other courts in this District have cited and relied on the *Benítez-Rodríguez* holding. *See Cintrón v. Hosp. Comunitario El Buen Samaritano, Inc.*, 597 F. Supp. 3d 515, 533 n.23 (D.P.R. 2022) ("EMTALA and the vast case law on the subject indicates that once a patient is admitted in good faith by a hospital for further treatment, EMTALA's stabilization requirements cease to apply…."); *Nieves Floran v. Doctors' Ctr. Hosp., Inc.*, No. CV 16-1930 (BJM), 2020 WL 716669, at *5 (D.P.R. Feb. 12, 2020) (same); *Ceballos-Germosen v. Doctor's Hosp. Ctr. Manatí*, 62 F. Supp. 3d 224, 232 (D.P.R. 2014); *Matta-Rodríguez v. Ashford Presbysterian Cmty. Hosp.*, 60 F. Supp. 3d 300, 308 (D.P.R. 2014), *on reconsid.*, Civil No. 12-1028 (PAD), 2014 WL 5313787 (D.P.R. Oct. 17, 2014); *Vázquez-Rivera v. Hosp. Episcopal San Lucas, Inc.*, 620 F. Supp. 2d 264, 270 (D.P.R. 2009).

After independent research, the Court can think of two additional layers of difficulty in determining whether EMTALA's stabilization duties end with the mere admittance of the patient for care and treatment at the participating hospital. First, courts within the First Circuit have more recently departed from the 42 C.F.R. § 489.24(d)(2)(i) rule. *See inter alia Duffus v. MaineHealth*, 791 F. Supp. 3d, 61 (D. Me. July 14, 2025). Second, although the decisions from courts within this District cited above did not necessary applies the *Chevron* deference during their assessment, they were in fact decided during the *Chevron* era, which, of course, is a thing of the past. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("Chevron is overruled").

However, the Court need not blaze a trail here. Because the parties left the record barren, the Court cannot issue summary judgment regardless of which legal test applies. Indeed, HPA does not claim or point to evidence that would show that it met the 42 C.F.R. § 489.24(d)(2)(i) requirements, which, aside from admitting the patient, also require that the hospital show "good faith." *See Duffus v. MaineHealth*, 791 F. Supp. 3d at 75 ("recognizing the possibility that a hospital could attempt to circumvent the stabilization requirement by 'ostensibly admitting' a patient, with no intention of treating the patient, and then inappropriately transferring or discharging the patient without having met the stabilization requirement… the final rule added a 'good faith' requirement. That is, a hospital satisfies its stabilization requirement under the final CMS rule when it admits a patient to inpatient care 'in good faith in order to stabilize the emergency medical condition.'")(*quoting* 68 Fed. Reg. at 53248, 2003 WL 22074670 (F.R.)). Thus, even if

HPA's legal contentions were sound (*i.e.* that 42 C.F.R. § 489.24(d)(2)(i) was the applicable test—issue that Court does not decide here), the Court cannot grant summary judgment because HPA did not explain how admitting the patient was done in "good faith" or point to a proposed statement of uncontested fact (or to any evidence on the record) for the Court to conclude that no genuine dispute existed over the facts that would show "good faith" by the hospital in admitting the patient. *See* Fed. R. Civ. P. 56(c)(1). To be sure, the Court is not assuming that HPA acted in bad faith, but it cannot draw an inference of compliance with 42 C.F.R. § 489.24(d)(2)(i)'s good faith standard in favor of a summary judgment movant. *Quintana-Dieppa*, 130 F.4th at 7 ("the district court must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor….")(cleaned up).

## VI.　Conclusion

In light of all the above, the Court hereby **DENIES** HPA's motion for summary judgment at **ECF No. 41**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 22nd day of January, 2026.

　　　　　　　　　　　　　　　　　　　　　　　　**S/AIDA M. DELGADO-COLÓN**
　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**